This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant-appellant, Roberto Charris ("Charris"), appeals his conviction from the Lorain County Court of Common Pleas. We affirm.
 I.
In December 1997, Cynthia Hervey ("Cynthia"), alleged that her mother's boyfriend, Charris, sexually abused her on a daily basis for over a year. The grand jury indicted Charris on six counts of rape, in violation of R.C. 2907.02(A)(1)(b)[1] and one count of endangering children, in violation of R.C. 2919.22(A).
Charris pleaded not guilty and his jury trial began on July 6, 2000. The state presented six witnesses including Cynthia, her aunt and grandmother, Dr. McDavid, a pediatric nurse practitioner and the intake worker form Lorain County Children's Services ("LCCS"). The defense presented three witnesses including Cynthia's mother, Marsha Peters ("Peters"), Charris and his son, Luis.
On July 25, 2000, the trial court convicted Charris of all counts and sentenced him to consecutive life sentences for each count of rape and a concurrent sentence of five months for the count of endangering children. Following the jury trial, the trial court adjudicated Charris a sexually violent predator, a sexual oriented offender and a sexual predator.
Charris appeals his conviction to this court and raises three errors. The three assignments of error will be discussed out of sequence for ease of discussion.
 II.
Assignment of Error No. 1:
 APPELLANT WAS DENIED HIS RIGHT TO A SPEEDY TRIAL PURSUANT TO R.C. 2945.71 IN VIOLATION OF THE RIGHTS GUARANTEED HIM BY THE SIXTH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION 10, OF THE OHIO CONSTITUTION WHEN THE CASE WAS NOT BROUGHT TO TRIAL WITHIN THE TIME REQUIREMENTS OF R.C. 2945.71.
 In his first assignment of error, Charris argues that his statutory and constitutional rights to a speedy trial were violated.
When reviewing an assignment of error raising a defendant's denial of his right to a speedy trial, this Court must apply the de novo standard to questions of law and the clearly erroneous standard to questions of fact. State v. Thomas (Aug. 4, 1999), Lorain App. No. 98CA007058, unreported, at 4.
Ohio's speedy trial statute provides that "[a] person against whom a charge of felony is pending * * * [s]hall be brought to trial within two hundred seventy days after the person's arrest." R.C. 2945.71(C)(2). The time requirements set forth in R.C. 2945.71 are subject to the extensions provided in R.C. 2945.72.
R.C. 2945.73(B) states, "[u]pon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged if he is not brought to trial within the time required by sections 2945.71 and 2945.72 of the Revised Code." A defendant presents a prima facie case for discharge based upon a violation of speedy trial limitations by alleging in a motion to dismiss that he was brought to trial after expiration of the applicable speedy trial period. State v.Butcher (1986), 27 Ohio St.3d 28, 30-31, see also, State v. Grinnell
(1996), 112 Ohio App.3d 124, 132-133. The burden then shifts to the state to produce evidence demonstrating that actions or events chargeable to the defendant extended or tolled the time for speedy trial, such that the defendant's right to a speedy trial was not violated. Butcher,27 Ohio St.3d at 30-31. If the state fails to bring forth evidence in rebuttal, then discharge is required. Id.
In the present case, Charris did not assert his statutory or constitutional right to a speedy trial by filing a motion to dismiss on speedy trial grounds. R.C. 2945.73(B) requires that a motion to dismiss for a speedy trial violation must be made "at or prior to the commencement of trial." Charris did not make an oral motion to dismiss or file a motion to dismiss. Therefore, Charris failed to present a prima facie case for discharge based upon a violation of speedy trial limitations. Accordingly, Charris's first assignment of error is overruled.
 III.
Assignment of Error No. 3:
 THE CONVICTIONS IN THIS CASE WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WERE IN VIOLATION OF APPELLANT'S RIGHTS AS GUARANTEED BY THE CONSTITUTIONS OF THE UNITED STATES AND THE STATE OF OHIO.
 In his third assignment of error, Charris argues that his convictions are against the manifest weight of the evidence. We disagree.
When a defendant asserts that his conviction is against the manifest weight of the evidence,
 an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
 State v. Otten (1986), 33 Ohio App.3d 339, 340. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
R.C. 2907.02(A)(1)(b) states that "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." Sexual conduct is defined as:
 vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.
R.C. 2907.01(A). R.C. 2919.22(A) states:
 [n]o person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. It is not a violation of a duty of care, protection, or support under this division when the parent, guardian, custodian, or person having custody or control of a child treats the physical or mental illness or defect of the child by spiritual means through prayer alone, in accordance with the tenets of a recognized religious body.
 At trial, the state presented six witnesses. Cynthia testified that from December 1996 to December 1997, Charris sexually abused her on a daily basis. Cynthia, her mother and brother were living with Charris and his three children at the time of the abuse. She stated that after school Charris would order her to go to the upstairs bathroom. After joining her in the bathroom, Charris would tell her to take off her clothes while he undressed. Cynthia testified that Charris would touch her body until he was aroused, rape her vaginally and then rape her anally.
In addition to the daily abuse by Charris, Cynthia was also being sexually abused by Charris's son, Luis. Cynthia testified that Luis would rub himself against her "butt and * * * vagina."
While Cynthia's family lived with Charris, he was the disciplinarian. She testified that he would whip her with a belt for eating a meal too slowly. She feared Charris and she believed his threats that he would kill her if she told anyone about the incidents in the bathroom. Cynthia testified that she was unable to report the daily abuse because she did not feel safe and believed that no one could protect her from Charris. Eventually, she confided in her aunt and grandmother on the day that she believed the family was moving out of Charris's home. Cynthia testified that she documented the incidents of sexual abuse in a notebook. However, the police were unable to locate this notebook.
Cynthia's aunt and grandmother contacted the police after Cynthia confided in them about the sexual abuse. After meeting with the police, Cynthia was examined at Elyria Memorial Hospital and Rainbow Babies and Children's Hospital ("Rainbow").
Lauren McAliley, a pediatric nurse practitioner with the Child Protection Program at Rainbow, testified that she examined Cynthia on February 4, 1998. McAliley explained that she uses the Fresno Classification System to determine the overall likelihood of sexual abuse. The Fresno System classifies physical and laboratory findings into five levels: 1) normal; 2) nonspecific; 3) suspicious; 4) suggestive of sexual abuse or blunt force penetration; and 5) clear evidence of either sexual abuse, inflicted or accidental blunt force or penetrating trauma.
McAliley's examination of Cynthia occurred approximately two months after the last incident of sexual abuse. McAliley classified the findings from Cynthia's physical examination as clear evidence of either sexual abuse or a blunt force, penetrating trauma. She testified that Cynthia's injuries could have been cause by a boy's finger or penis.
Dr. McDavid is the Medical Director of Child Advocacy and Protection at Rainbow. She was not present for Cynthia's examination but she conducted a peer review of Cynthia's medical record. Dr. McDavid concurred with McAliley's opinion that there was clear evidence of either sexual abuse or a blunt force penetrating trauma. Dr. McDavid also stated that this type of finding could not have been caused by merely rubbing outside the vagina.
Jennifer Marple is currently a supervisor at LCCS. In 1997, Marple worked in the sexual intake unit and was responsible for investigating allegations of sexual abuse, assessing a child's safety and assessing the family's ability to keep the child safe. Marple investigated the allegations that Cynthia had been abused by Charris. Initially the children were returned to their mother. However, Marple testified that LCCS was concerned that Peters could not provide a supportive network to her children. LCCS removed the children from Peters and placed them with their grandmother.
The defense presented three witnesses including Charris, Luis and Peters. Peters testified that she was struggling with a drug problem when her family moved into Charris's home. Her difficulties with drug use continued until some time in 1998. During the seven years that Peters lived with Charris, they shared the responsibility of raising the children. Peters worked second shift and was not home with the children after school.
Luis testified that he sexually abused Cynthia on three occasions. He also testified regarding the allegations of Charris's sexual abuse. He testified that his father had a strict rule regarding one person in the bathroom at a time. Luis stated that his bedroom was located adjacent to the upstairs bathroom. Due to the close proximity of his room to the bathroom, Luis would have been able to hear sounds from the bathroom. He never heard any sounds of abuse from the bathroom. He also never heard Charris order Cynthia to go to the bathroom after school.
After school, Luis would either work on his homework in his room or play video games in his sister's room. On cross-examination he stated that he would sometime be outside playing basketball with friends after school.
Charris denied the allegations that he repeatedly raped Cynthia on a daily basis from December 1996 to December 1997. Charris testified that he was familiar with the damage that sexual abuse victims suffer because his two daughters were the victims of sexual abuse.[2] He attended counseling with his daughters before Peters and her children moved into his house.
Charris admitted that he has a bad temper especially when it came to his children. He stated that on one occasion he whipped Cynthia with a belt because she was stealing things from other children at school. He testified that he caught Luis sexually abusing Cynthia. After walking in on Luis and Cynthia, he did not immediately notify the police or Peters of the incident.
Charris stated that between December 1996 and December 1997 there were often several people in the house including five children, a friend of the family, a baby-sitter, Peters and himself. He stated that it would not be possible to do anything unobserved in their small house with so many people around. However, on cross-examination, Charris testified that undetected sexual abuse did occur in his house because he was not aware of the two other times that Luis sexually abused Cynthia.
After reviewing the evidence, we cannot conclude that the trier of fact lost its way or created a manifest miscarriage of justice. Evidence was presented that established the elements of rape and endangering children. The jury did not lose its way in convicting Charris. The evidence does not weigh heavily in Charris's favor, and the conviction is not against the manifest weight of the evidence. Charris's third assignment of error is overruled.
 IV.
Assignment of Error No. 2:
 APPELLANT'S RIGHTS UNDER ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION WERE VIOLATED AND HE WAS IMPROPERLY DENIED A CRIM.R. 29 ACQUITTAL WHEN HIS CONVICTIONS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE.
 In his second assignment of error, Charris argues that the state failed to present sufficient evidence to support his conviction. We disagree.
Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." In reviewing the denial of a motion for acquittal, this court must construe the evidence in a light most favorable to the state. State v. Messer (1995), 107 Ohio App.3d 51,54. A motion for judgment of acquittal is properly denied "if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Gasser (1993), 89 Ohio App.3d 544, 547, quoting State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus.
Having already found the convictions were supported by the manifest weight of the evidence, we find that there was sufficient evidence that Charris did commit six counts of rape and one count of endangering children. The trial court did not err by denying Charris's motion for acquittal. The second assignment of error is overruled.
 V.
Having overruled all three assignments of error, we affirm the judgment of the trial court.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
______________________________________ WILLIAM R. BAIRD
BATCHELDER, P.J., SLABY, J. CONCUR.
[1] The record reflects that the six counts of rape also included a sexually violent predator specifications.
[2] The record reflects that Charris's first marriage ended in divorce. Pursuant to the divorce, Charris's ex-wife had custody of all three children. Charris testified that Luis stayed with his mother for one month and then moved in with him. LCCS placed Charris's daughters with him in either 1991 or 1992. Charris stated that his ex-wife's boyfriend molested his daughters.